IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-768-D

RE/MAX LLC,                              )
                                         )
                Plaintiff,               )
                                         )
        v.                               )   **ORDER**
                                         )
M.L. JONES & ASSOCIATES, LTD.,           )
and MATTHEW L. JONES,                    )
                                         )
                Defendants.              )

On November 26, 2012, Re/Max ("Remax"), a real estate brokerage firm, sued M.L. Jones & Associates and Matthew Jones d/b/a FavoriteAgent.com ("defendants") alleging: (1) trademark infringement under federal law; (2) unfair competition under federal law; (3) unfair and deceptive trade practices under North Carolina law; and (4) trademark infringement and unfair competition under North Carolina law. Compl. [D.E. 1] ¶¶ 23–41. On June 13, 2013, defendants answered and filed six counterclaims. Countercl. [D.E. 22] ¶¶ 55–71. On August 29, 2013, the court granted in part Remax's motion to dismiss defendants' counterclaims and dismissed three counterclaims. See Order [D.E. 26]. Three counterclaims remain: (1) a request for declaratory judgment that Remax's trademarks are invalid; (2) cancellation of Remax's trademarks; and (3) a request for declaratory judgment that defendants did not infringe Remax's trademarks. See id. 3–4, 7.

Remax filed two motions for summary judgment [D.E. 59, 61] and supporting memoranda [D.E. 60, 62] concerning its claims and defendants' remaining counterclaims. Defendants responded [D.E. 69, 70], and Remax replied [D.E. 71, 72]. As explained below, the court grants in part and denies in part Remax's motion for partial summary judgment on defendants' first two counterclaims and denies Remax's motion for partial summary judgment on defendants' third counterclaim and Remax's claims.

I.

Remax is a real estate brokerage firm that provides services through franchisees and affiliated independent contractors. Three Remax trademarks are central to this case. On June 9, 1992, Remax registered the first trademark, number 1,691,854 ("the '854 trademark"). Walsworth Decl. [D.E. 60-1] 4. The '854 trademark consists of a dark-over-light-over-dark background with a black-and-white hot air balloon. See id. On July 21, 1992, Remax registered the second trademark, number 1,702,048 ("the '048 trademark"). Walsworth Decl. 6. The '048 trademark consists of a red-over-white-over-blue design. See id. On September 29, 1992, Remax registered the third trademark, number 1,720,592 ("the '592 trademark"). See [D.E. 1-1] 3; United States Patent and Trademark Office, http://tmsearch.uspto.gov /bin/showfield?f=doc&state=4809:20nuq.2.9 (last visited Dec. 29, 2014). The '592 trademark consists of a red-over-white-over-blue design with a red-white-and-blue hot air balloon. See id. The three trademarks are shown below:



**The '854 Trademark**    **The '048 Trademark**



**The '592 Trademark**

Defendants began as a real estate company and then gradually migrated to software licensing

2

for real estate agents. See Walsworth Decl. 25, 28–29, 32 (Jones deposition). Jones approved a FavoriteAgent.com logo that incorporates a red-over-white-over-blue design, as seen below, and distributed it to defendants' independent contractors for use in their real estate practices. Id. 30–32 (Jones deposition).

 

In late 2012, a Remax agent discovered and photographed a FavoriteAgent.com yard sign and notified Remax's assistant general counsel. Scoville Decl. [D.E. 60-2] 3. Remax contacted defendants and objected to defendants' use of the yard signs with a red-over-white-over-blue design. Walsworth Decl. 36–37 (Jones deposition). Jones offered to change the sign in exchange for $50,000. Id. 38 (Jones deposition). After the parties failed to compromise, Remax filed suit.

II.

Remax's four claims and defendants' three remaining counterclaims fit within two general categories. Defendants' first two counterclaims concern the validity of Remax's trademarks. Remax's four claims and defendants' third counterclaim concern the potential infringement of Remax's trademarks by defendants.

A.

In defendants' first counterclaim they seek a declaratory judgment that the '048 trademark and the '854 trademark are "incapable of functioning as a trademark" because they allegedly resemble the national flag of the Netherlands. Countercl. ¶¶ 55–59. In defendants' second

3

counterclaim they ask the court to cancel the '048 trademark and '854 trademark pursuant to 15 U.S.C. § 1119. Countercl. ¶¶ 60–61. Both counterclaims rely on an alleged violation of 15 U.S.C. § 1052(b), which prohibits the registration of a trademark that "consists of or comprises the flag . . . of any foreign nation, or any simulation thereof." A court may cancel a registration of a trademark that was registered in violation of section 1052(b). See 15 U.S.C. §§ 1064(3), 1119. A registered trademark is presumed valid, 15 U.S.C. § 1057(b), and a party seeking cancellation must rebut this presumption by a preponderance of the evidence. See, e.g., Retail Servs. Inc. v. Freebies Publ'g, 364 F.3d 535, 542 (4th Cir. 2004); Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1529 n.4 (4th Cir. 1984).

In determining whether a trademark simulates a flag, a court considers the trademark and the flag in a comparison "of first impression . . . without a careful analysis and side-by-side comparison." In re Advance Indus. Sec., Inc., 194 U.S.P.Q. 344, 1977 WL 22511, at *2 (T.T.A.B. 1977); see In re Peter S. Herrick, P.A., 91 U.S.P.Q.2d, 2009 WL 1741898, at *5 (T.T.A.B. 2009); Knorr-Nahrmittel Aktiengesellschaft v. Havland Int'l, Inc., 206 U.S.P.Q. 827, 1980 WL 30123, at *7 (T.T.A.B. 1980); In re Waltham Watch Co., 179 U.S.P.Q. 59, 1973 WL 19968, at *2 (T.T.A.B. 1973). The simulation inquiry focuses on whether the average purchaser or person would associate the trademark with the flag. See Knorr-Nahmittel, 1980 WL 30123, at *6 (stating that the relevant factor is "the commercial reaction that [the trademark] imports to viewers"); In re Advance Indus. Sec., 1977 WL 22511, at *2 (finding a seal was registrable because it was unlikely that "the average purchaser upon seeing applicant's overall mark would associate the eagle and shield design in the context with which it is used with the Coat of Arms of the United States"); In re Waltham, 1973 WL 19968, at *2 (finding that the applicant's use of "common elements of flag designs such as horizontal or vertical lines, crosses or stars" did not constitute a simulation of any nation's flag because the trademark was "readily distinguishable from any of the flags of the nations alluded to by the examiner"). A court also must consider the "fallibility of memory" when determining whether the

4

average person could, without a careful analysis, associate the trademark with a nation's flag. In re Advance Indus. Sec., 1977 WL 22511, at *2.

As for the '854 trademark, it bears no resemblance to the Netherlands's flag other than its use of three horizontal bands. The '854 trademark is black-and-white and includes a hot air balloon image. See U.S. Dep't Of Commerce, Patent and Trademark Office, Trademark Manual of Examining Procedure ("TMEP") § 1204.01(b) (October 2014) (noting that a mark is registrable if it "appears in a color different from that normally used in the national flag" or "is substantially obscured by . . . designs"); TMEP §1204.01(a) (noting that "a black-and-white drawing showing three horizontal rectangles would not be refused" as a foreign flag). Furthermore, no evidence suggests that consumers would, as a first impression, associate the '854 trademark with the Netherlands's flag. Thus, the court rejects defendants' argument that the '854 trademark simulates the Netherlands's flag and therefore violates 15 U.S.C. § 1052(b).

As for the '048 trademark, the simulation analysis does not apply because the '048 trademark is not a simulation. See In re Certa ProPainters, Ltd., 2008 WL 5009753 (T.T.A.B. Nov. 14, 2008) (unpublished) (noting that the simulation analysis applies when the "mark does not include the entirety of the actual . . . flag"); cf. In re Peter S. Herrick, 2009 WL 1741898, at *4–5 (applying the simulation analysis to an alleged simulation involving a flag); Knorr-Nahmittel, 1980 WL 30123, at *6–7 (same); In re Advance Indus. Sec., 1977 WL 22511, at *2 (same); In re Waltham, 1973 WL 19968, at *2 (same). Rather, as shown below, the '048 trademark consists of the Netherlands's flag. See In re Peter S. Herrick, 2009 WL 1741898, at *5 (quoting In re Advance Indus. Sec., 1977 WL 22511, at *1, for the proposition that a simulation "gives the appearance or effect or has the characteristics of the original item").[1] As a depiction of the Netherlands's flag, the '048 trademark is "barred from registration under [section 1052(b)]." Natural Footwear Ltd. v. Hart Schaffner &

---

[1] Although the trademark carries a presumption of validity, defendants' burden to overcome this presumption is one of production, not persuasion. See Retail Servs. Inc., 364 F.3d at 542. They have met this burden of production by citing the Netherlands's flag.

Marx & Roots, Inc., 577 F. Supp. 128, 131 (D.N.J. 1983). Thus, Remax's evidence of lack of association between the '048 trademark and the Netherlands's flag by consumers, which itself suffers from at least one serious flaw, is insufficient to save the '048 trademark from a clear statutory bar to any trademark that "consists of or comprises the flag . . . of any foreign nation."[2] As one treatise explains:

> Section 2(b)'s <u>absolute bar</u> is apparently founded upon the thinking that these kinds of governmental insignia, such as a national flag or seal, should not be registered as symbols of origin for commercial goods and services. That is, these kinds of governmental insignia ought to be kept solely to signify the government and not be sullied or debased by use as symbols of business and trade.

J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 19:78 (4th ed. 2014) (emphasis added).

**The '048 Trademark**     **The Netherlands's Flag**



See <u>The Netherlands</u>, Flags of the World, http://www.crwflags.com/fotw/flags/nl.html (last visited Dec. 29, 2014) (referenced in TMEP § 1204.05). Accordingly, pursuant to 15 U.S.C. § 1119, the court orders the cancellation of the '048 trademark because it was improperly registered in violation

---

[2] Remax's expert witness, Dr. Peterson, conducted a national survey in which he asked participants whether the '048 trademark reminded them of anything else. See Peterson Decl. [D.E. 60-4] 2. Although the survey results indicated that no statistically significant number of participants associated the '048 trademark with the Netherlands's flag, id. 3–4, the survey suffers from at least one significant flaw in that the participants were shown the '048 design on a yard sign and not on a plain background. Thus, the context of the survey may have biased the results against an association with the Netherlands's flag. See [D.E. 60-5] 20–21. Additionally, the survey fails to account for the participants' ability or inability to identify any flags of any European countries.

6

of 15 U.S.C. § 1052(b).

In sum, the court grants in part and denies in part Remax's motion for partial summary judgment on defendants' first two counterclaims. The '854 trademark is not a simulation of the Netherlands's flag and is valid. The '048 trademark consists of the Netherlands's flag and is canceled pursuant to 15 U.S.C. § 1119.

B.

In defendants' third counterclaim they seek a declaratory judgment that defendants' use of its red-over-white-over-blue yard sign does not infringe Remax's trademarks. Countercl. ¶¶ 62–63. In Remax's four claims, Remax asserts that defendants have (1) infringed its trademarks; (2) engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (3) violated the North Carolina Unfair & Deceptive Trade Practices Act ("UDTPA"); and (4) violated the North Carolina common law of trademark infringement and unfair competition. Compl. ¶¶ 23–41.

To establish trademark infringement under federal law, Remax must prove that (1) it owns a valid mark; (2) defendants used the mark in commerce and without Remax's authorization; (3) defendants used the mark, or an imitation of it, in connection with the sale of goods and services; and (4) defendants' use of the mark is likely to confuse customers. Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012) (quotation omitted); see 15 U.S.C. § 1114(1)(a); George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009); Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 259 (4th Cir. 2007); People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001). "The North Carolina common law of unfair competition in the context of trademarks . . . is similar to the federal law of trademark infringement." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987); see, e.g., Charcoal Steak House of Charlotte, Inc. v. Staley, 263 N.C. 199, 201–03, 139 S.E.2d 185, 187–88 (1964); D-E-W Foods Corp. v. Tuesday's of Wilmington, Inc., 29 N.C. App. 519, 523, 225 S.E.2d 122, 124 (1976). Thus, the court analyzes counts one and four in Remax's complaint and

7

defendants' third counterclaim together.

The defendants do not contest the second and third elements of infringement. See Def.'s Mem. Opp'n Mot. Partial Summ. J. Count III [D.E. 69] 3–4. Thus, the dispute turns on the likelihood of consumer confusion between the two valid Remax trademarks and defendants' FavoriteAgent.com logo. See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 127 (4th Cir. 1990) ("The ultimate question, for purposes of determining liability in trademark infringement actions, is whether there exists a likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or simply confused, as to the source of the goods in question." (quotation omitted)). Nine factors are relevant to the "likelihood of confusion" inquiry:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Rosetta Stone, 676 F.3d at 153. The court does not have to consider every factor or weigh them equally in "determining the ultimate statutory question of likelihood of confusion." Id. at 154. Likewise, a plaintiff need not show that every factor supports its position on the likelihood of confusion issue. Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 (4th Cir. 2006).

The first factor, the strength of distinctiveness of the plaintiff's trademark, is especially significant to the likelihood of confusion analysis. Id. A trademark is classified into one of four categories, in increasing order of strength: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary and fanciful. Perini, 915 F.2d at 124. The Remax trademarks are arbitrary and fanciful because the hot air balloon and the tri-color bands have no common relationship to real estate broker services. See id.; Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 11 n.12 (2d Cir. 1976); Re/Max Int'l, Inc. v. Trendsetter Realty, LLC, 655 F. Supp. 2d 679, 699 (S.D. Tex. 2009). Thus, this factor favors Remax.

As for the second factor, the similarity of the two marks, the court looks to the "dominant

portions of the parties' marks." George & Co., 575 F.3d at 396. "In other words, [the court] focus[es] on whether there exists a similarity in sight, sound, and meaning which would result in confusion." Id. Both Remax and FavoriteAgent.com use a similar red-over-white-over-blue design, although the bands are of different heights. The Remax bands are equally spaced, whereas defendants' logo has a larger white space with smaller red and blue bands. The Remax signs use a balloon on the left portion of the mark, whereas the defendants' logo uses an outline of a house in the middle of the white portion. Although this factor slightly favors Remax, a reasonable jury might not consider the signs sufficiently similar to result in confusion.

As for the third factor, the similarity of goods or services that the marks identify, Jones claims that the FavoriteAgent.com logo is used to market software to real estate professionals. See Def.'s Mem. Opp'n Mot. Partial Summ. J. Count III at 4–5. Nonetheless, Jones concedes that there have been some instances where "the same design has been used in connection with the sale of real estate brokerage services." Id. at 5. Even assuming that Jones correctly asserts that defendants' business is aimed at real estate professionals, defendants have used the mark in connection with offers of real estate services. See George & Co., 575 F.3d at 397 (noting that "the goods in question need not be identical or in direct competition with each other"). Thus, this factor slightly favors Remax.

As for the fourth factor, similarity of facilities, Remax uses commercial office buildings to offer real estate services. See Scoville Decl. 16; Def.'s Mem. Opp'n Mot. Partial Summ. J. Count III at 5. Although defendants now focus on online services, they have had and perhaps continue to operate a commercial office from which real estate agents worked. See Walsworth Decl. 28–29 (Jones deposition). Thus, this factor slightly favors Remax.

As for the fifth factor, the similarity of advertising, both parties advertise online. Id. 47; Scoville Decl. 2; Scoville Decl. Part II [D.E. 60-3] 16–18. Jones claims, however, that defendants' advertising is "business to business" and is directed to real estate professionals, whereas Remax

9

advertises directly to consumers. Def.'s Mem. Opp'n Mot. Partial Summ. J. Count III at 5; Scoville Decl. Part II 16–18; cf. Pizzeria Uno Corp., 747 F.2d at 1535 (considering whether consumers in the same geographic area could hear or see advertisements for the two parties on the same medium); Lone Star Steakhouse, 43 F.3d at 937 (finding similarity where "both parties advertise in newspapers and offer coupons in the [same geographic] area, which consumers can redeem for discounts on meals"). A genuine issue of material fact exists on this factor.

As for the sixth factor, defendants' intent to infringe, "[i]f there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion[.]" Pizzeria Uno Corp., 747 F.2d at 1535. Even a good-faith belief that the use of the mark will not lead to confusion is no defense if there is actual or likely confusion. Id. In support of this factor, Remax uses circular logic, claiming that intent to infringe is shown by defendants' infringement, when infringement is the subject of this action. Pl.'s Mem. Supp. Summ. J. Count III [D.E. 62] 15. Remax also cites Jones's request for $50,000 to stop using the logo as evidence of intent to infringe. See Walsworth Decl. 37–38 (Jones deposition). Jones's request, however, does not necessarily indicate an intent to infringe. A reasonable jury also could conclude that Jones's request concerned defendants' cost of changing logos and not an attempt to "pass off their services as being associated with or approved by [Remax.]" Pl.'s Mem. Supp. Summ. J. Count III at 15–16. Furthermore, Jones claims that he provided the FavoriteAgent.com design to employees and consumers but did not provide actual signs. Walsworth Decl. 39. Here, a genuine issue of material fact exits concerning whether defendants intended to infringe Remax's trademarks.

"The seventh and most important factor is actual confusion." George & Co., 575 F.3d at 398; see Lone Star Steakhouse, 43 F.3d at 937 ("Most importantly, [plaintiff] produced undisputed evidence demonstrating actual confusion among consumers."); Lyons P'ship L.P. v. Morris Costumes, Inc., 243 F.3d 789, 804 (4th Cir. 2001) ("[W]e have indicated that the seventh factor—actual confusion—is often paramount."). Remax concedes that it has no evidence on this

10

factor, but claims that such evidence is not necessary. See Pl.'s Mem. Supp. Summ. J. Count III 16 n3. However, Remax's failure to produce any evidence of actual confusion weighs against its infringement claim.

As for the eighth factor, the quality of defendants' product, neither party presented evidence on this factor. This factor, however, does not appear to apply in this case. See Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 467 (4th Cir. 1996) (stating that this factor "is most appropriate in situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods").

As for the ninth factor, the sophistication of the consumers, this factor may not apply in this case. "If the typical consumer in the relevant market is sophisticated in the use of—or possesses an expertise regarding—a particular product, such sophistication or expertise may be pertinent in determining the likelihood of confusion." Id.; Perini Corp., 915 F.2d at 127–28. If Remax is claiming infringement solely on the yard signs that defendants used, the record does not reflect that home purchasers are sophisticated enough to tell the difference between Remax and FavoriteAgent.com. See George & Co., 575 F.3d at 400 (stating that "this factor will only be relevant when the relevant market is not the public-at-large" (quotation omitted)). To the extent that Remax claims infringement from defendants' use of its FavoriteAgent.com logo to advertise its software services to real estate professionals, sophistication likely would apply because such professionals would not be confused by the allegedly similar Remax and FavoriteAgent.com signs. See Sara Lee Corp., 81 F.3d at 467 ("The relative sophistication of the market may trump the presence or absence of any other factor."). Thus, a genuine issue of material fact exists concerning this factor.

In sum, considering all the factors together, a genuine issue of material fact exists concerning whether defendants' use of the FavoriteAgent.com logo would likely confuse consumers. Thus, the court denies summary judgment to Remax on counts one and four and on defendants' third

counterclaim.

Remax's second claim is for unfair competition under section 43(a) of the Lanham Act. See 15 U.S.C. § 1125(a)(1). The elements of unfair competition under section 43(a) are the same as the elements for trademark infringement. See Synergistic Int'l, LLC, 470 F.3d at 170; People for Ethical Treatment of Animals, 263 F.3d at 364; Lone Star Steakhouse, 43 F.3d at 930. Thus, the court denies Remax's motion for summary judgment on this claim.

In its third claim, Remax seeks relief under the North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). In order to prove a claim under the UDTPA, N.C. Gen. Stat. §§ 75-1.1–75-43, a plaintiff must prove "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." Griffith v. Glen Wood Co., 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007) (quotation omitted); Bumpers v. Bank of N. Va., 147 S.E.2d 220, 226–29 (N.C. 2013); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); RD & J Props. v. Lauralea-Dilton Enters., LLC, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). Under the UDTPA, a plaintiff must prove that defendants' conduct was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. See, e.g., Tucker v. Blvd. at Piper Glen, LLC, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002); Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

Trademark infringement can be a deceptive and unfair act. See Lyons P'ship, L.P., 243 F.3d at 804–05; Shell Trademark Mgmt. BV & Motiva Enters., LLC v. Ray Thomas Petroleum Co., 642 F. Supp. 2d 493, 505 (W.D.N.C. 2009); Microsoft Corp. v. Computer Serv. & Repair, Inc., 312 F. Supp. 2d 779, 785–86 (E.D.N.C. 2004). Genuine issues of material fact exist. Thus, summary

Case 5:12-cv-00768-D   Document 76   Filed 12/30/14   Page 12 of 13

judgment is inappropriate on this claim.

III.

In sum, the court GRANTS in part and DENIES in part Remax's motion for partial summary judgment on defendants' first two counterclaims [D.E. 59]. The '048 trademark is an invalid mark under 15 U.S.C. § 1052(b). In accordance with 15 U.S.C. § 1119 and upon entry of final judgment, the clerk shall send this order to the Director of the Patent and Trademark Office, who shall enter the appropriate notation on the records of that office concerning the '048 trademark. The court DENIES Remax's motion for partial summary judgment on defendants' third counterclaim and Remax's four claims [D.E. 61]. Finally, the court orders the parties to participate in a court-hosted mediation with Magistrate Judge Robert B. Jones, Jr.

SO ORDERED. This **29** day of December 2014.

JAMES C. DEVER III
Chief United States District Judge